701 So.2d 443 (1997)
Robert L. KESTER and Stewart R. Kester, Appellants,
v.
Baird R. TEWKSBURY, Jr. and Geraldine E. Tewksbury, his wife, and The Cove Restaurant & Marina, Inc., a Florida corporation, Appellees.
No. 96-4089.
District Court of Appeal of Florida, Fourth District.
November 19, 1997.
*444 Daniel E. Oates of Daniel E. Oates, P.A., Pompano Beach, for appellants.
Robert A. Eisen, Ryan E. Willits and Wendy E. Vogel of the Law Offices of Eisen & Willits, Boca Raton, for appellees.
STEVENSON, Judge.
This appeal involves a dispute over the use of wooden docks adjacent to The Cove, a waterfront restaurant and marina in Broward County. Appellants, Robert and Stewart Kester, claimed ownership of the submerged land under the docks and sought compensation for the appellees' alleged use of their property.[1] Appellees, Baird and Geraldine Tewksbury, Jr., sought a declaration that the use of the docks was within the exercise of their littoral[2] rights. Despite the parties' stipulation that the Kesters were the record owners,[3] the trial court entered an order in favor of the appellees, finding that the federal government, and not appellants, owned the submerged property as the result of a prior conveyance. We hold that the trial court erred in declaring that the United States government held anything more than an easement over the submerged property, and we remand for further proceedings below.
In 1924, William L. Kester acquired a parcel of land from the Model Land Company. The deed conveying this land to William Kester described it as that lying west of the bank of the East Coast Canal. In 1934, William Kester granted an easement in the land adjacent to the East Coast Canal to the United States government for the purpose of widening and maintenance of the Intracoastal Waterway.
Then, in 1953, William Kester conveyed a portion of the subject parcel to the North Broward Land Company. The deed of conveyance described the portion conveyed as that "lying West of the Right-of-Way of [the] Intracoastal Waterway." As the result of a series of subsequent conveyances, the Tewksburys became the record owners of the parcel that had been conveyed by Kester to the North Broward Land Company. The land that William Kester acquired was that "lying west of the East Coast Canal," but the land that he conveyed was described as that "lying west of the right-of-way of the Intracoastal Waterway"; thus, the property beneath what is the now-widened Intracoastal Waterway was not included in the conveyance.
In reaching its decision that the United States government was the record owner of the submerged parcel, the trial court reasoned that by virtue of the 1934 easement that William Kester granted the United States, the United States had acquired fee simple title to the submerged land. We cannot agree.
First, although it is not dispositive, the document was entitled an "Easement Deed." See Fonact Corp. v. Superior Apartments, Inc., 251 So.2d 537 (Fla. 3d DCA 1971). Second, the plain language of the instrument itself describes the interest being conveyed as an easement. And, third, the language of the instrument sets forth the purposes for which the United States may enter or use *445 the land. Such a specification of purpose is inconsistent with a fee simple absolute conveyance of title. See Dean v. MOD Properties, Ltd., 528 So.2d 432, 433 (Fla. 5th DCA), review denied, 534 So.2d 400 (Fla.1988).
Because the 1934 easement did not convey the submerged parcel which William Kester had reserved for himself, his heirs, Robert and Stewart Kester, are now the fee simple owners of the submerged parcel. In so holding, we note that the record on appeal indicates that the State of Florida has disclaimed any interest in the property as sovereign land.[4] Accordingly, we reverse the final judgment entered by the trial court. Since the appellants conceded at oral argument that the Tewksburys do have littoral rights, on remand, the issues before the trial court will be limited to consideration of the causes of action set forth in the amended complaint, a determination of the scope of littoral rights, and whether the Tewksburys/The Cove's current use of the dock is an appropriate exercise of those littoral rights.
REVERSED and REMANDED.
PARIENTE, J., and MARRA, KENNETH A., Associate Judge, concur.
NOTES
[1] The record on appeal indicates that Robert and Stewart Kester claimed a 2/3 interest in the property and that the City of Deerfield Beach claimed a 1/3 interest. The City, however, settled prior to the matter being tried and is not a party to this appeal.
[2] The distinction between "riparian" and "littoral" rights has been summed up in the following manner:

In common usage "riparian" is generally used to define property having water frontage. In fact, the term "riparian" refers specifically to land abutting non-tidal or navigable river waters whereas "littoral" refers to the land abutting navigable ocean, sea, or lake waters.
Haynes v. Carbonell, 532 So.2d 746, 748 n. 2 (Fla. 3d DCA 1988).
[3] Litigants may not, however, bind a trial court by stipulating to questions of law. See Massachusetts Bonding & Ins. Co. v. Bryant, 175 So.2d 88 (Fla. 1st DCA 1965), aff'd, 189 So.2d 614 (Fla.1966); cf. Department of Transp. v. Florida East Coast Ry., 230 So.2d 726, 728 (Fla. 3d DCA 1970)(stating that issue as to whether the railroad was still the owner of the real property was a question of law).
[4] Generally, the State is the owner of the land that lies beneath navigable waters. See Richard Hamann & Jeff Wade, Ordinary High Water Line Determination: Legal Issues, 42 U. FLA. L.REV. 323 (1990), and Louis B. Guttmann, Sovereignty Land ClaimsBalancing Issues and Equities, 20 STETSON L.REV. 177 (1991).