811 So.2d 761 (2002)
Isaac Jerome NELSON, III, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-4597.
District Court of Appeal of Florida, Fourth District.
March 6, 2002.
*762 Carey Haughwout, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
*763 STEVENSON, J.
Isaac Jerome Nelson, III, was tried by jury and convicted of second degree murder with a firearm in the shooting death of his father and attempted first degree murder with a firearm involving his father's girlfriend. Nelson was sentenced to concurrent terms of 26.6 years imprisonment, including a 25-year mandatory minimum term of incarceration under section 775.087(2), Florida Statutes (1999), commonly referred to in its entirety as the "10/20/Life" statute. We affirm and write only to briefly address Nelson's claim that section 775.087(2) is unconstitutional.
Section 775.087(2) specifically provides that any person who discharges a firearm during the commission of certain enumerated felonies, which results in death or great bodily harm to any person, shall be sentenced to a mandatory minimum term of twenty-five years imprisonment. Nelson challenges the constitutionality of section 775.087(2) on the grounds that it (1) violates the single-subject rule, (2) violates the separation of powers provision, (3) violates substantive due process, (4) constitutes cruel and unusual punishment, and (5) is void for vagueness. We reject each of these claims.
Nelson has not shown that section 775.087(2) violates the single-subject rule. See Art. III, § 6, Fla. Const. ("Every law shall embrace but one subject and matter properly connected therewith, and the single subject shall be briefly expressed in the title."). In Chapter 99-12, Laws of Florida (1999), the session law creating section 775.087(2), the legislature noted that Florida ranks as one of the most violent states in the nation and that "criminals who use guns during the commission of violent crimes pose an increased danger to the lives, health, and safety of Florida's citizens." The legislature went on to state that the intent of the enactment of section 775.087 was to ensure that offenders who use guns to commit violent crimes would receive longer mandatory prison terms than provided in the then-current law, "effectively incapacitat[ing] the offender, prevent[ing] future crimes, and reduc[ing] violent crime rates." Id.
Appellant complains that some sections of Chapter 99-12 deal with probation, parole, and community control violators as well as the forfeiture of gain time for violation of control release. Appellant's argument is not persuasive since these related statutory provisions and topics were addressed primarily to incorporate changes mandated by the amendment to section 775.087. For instance, offenders serving a minimum mandatory term under section 775.087 are not eligible for probation, parole, statutory gain time, or control release. Thus, each topic addressed in the session law had a logical connection to a single subject, i.e., the increased liberty-deprivation sanctions utilized in punishing those offenders convicted of using guns to commit violent crimes. See Burch v. State, 558 So.2d 1, 3 (Fla.1990) (upholding section 893.13(1)(e), Florida Statutes (1987), finding that each topic in chapter 87-243 had a logical relationship to the single subject of controlling crime).[1]
*764 Claims that section 775.087(2) violates the separation of powers provision of the Florida Constitution because it removes sentencing discretion from the judiciary and prosecutorial discretion from the executive have been considered and rejected by the First District in Green v. State, 792 So.2d 643 (Fla. 1st DCA 2001). There, the court noted that section 775.087(2)'s precursor, section 775.087(2), Florida Statutes (1976), which required the imposition of a three-year mandatory minimum sentence for persons convicted of possessing or using a firearm during certain enumerated felonies, had survived separation of powers provision attacks made on the basis that the mandatory sentence removed sentencing discretion from the judiciary. See id. at 643 (citing Scott v. State, 369 So.2d 330 (Fla.1979)). The court in Green further pointed out that "[t]here is no difference between the language of the 10/20/ Life statute and [its predecessor statute, section 775.087(2), Florida Statutes (1976) ] addressed in Scott, other than the length of the mandatory terms." Id.
The Green court also addressed the contention that the 10/20/Life statute unlawfully restricts the exercise of executive discretion in determining whether and how to prosecute:
[A]s written, the 10/20/Life statute does not eliminate all prosecutorial discretion in seeking enhanced penalties under the statute, but instead clearly contemplates that in some qualifying cases prosecutors will use their discretion not to seek enhanced penalties under the statute. See § 775.087(5), Fla. Stat. (1999)(providing that "in every case in which a law enforcement agency based a criminal charge on facts demonstrating that the defendant met the criteria [of the Act] and in which the defendant did not receive the mandatory penalty, the state attorney must place in the court file a memorandum explaining why the minimum mandatory penalty was not imposed"). While such a provision might make it more onerous for a prosecutor to exercise his or her discretion not to seek enhanced penalties under the statute, it does not eliminate that discretion altogether.
792 So.2d at 644.
Section 775.087(2), Florida Statutes (1976), also withstood constitutional challenges similar to those made here based on due process and cruel and unusual punishment claims.
[W]here a sentence is one that has been established by the legislature and is not on its face cruel and unusual, it will be sustained when attacked on grounds of due process, equal protection, or separation of power theories. We do not find the mandatory three-year sentence provision to be cruel or unusual.
Sowell v. State, 342 So.2d 969, 969 (Fla. 1977) (citations omitted). Likewise, here, we are not persuaded by appellant's argument that his twenty-five year minimum prison sentence for discharging a firearm, killing one person and seriously injuring another, constitutes cruel or unusual punishment. See Solem v. Helm, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (holding that reviewing courts "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes"). Appellant's substantive due process claim must fail as well because section 775.087(2) "bears a reasonable relationship to a permissive legislative objective and is not discriminatory, arbitrary, or oppressive." Ilkanic v. City of Fort Lauderdale, 705 So.2d 1371, 1372 (Fla.1998).
Lastly, we cannot find validity in appellant's void for vagueness challenge wherein he argues that section 775.087(2) fails to define various terms within that section. See State v. Hagan, 387 So.2d *765 943, 945 (Fla.1980) (finding that "[t]he legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague"). On appeal, appellant does not identify which terms within the statute require further illumination so that a person of ordinary intelligence would understand them.
Because appellant failed to demonstrate reversible error in his remaining points, we affirm appellant's convictions and sentence.
AFFIRMED.
STONE and TAYLOR, JJ., concur.
NOTES
[1] Compare Taylor v. State, 27 Fla. L Weekly D250, D251, ___ So.2d ___, ___ (Fla. 2d DCA Jan.23, 2002) (finding that chapter 99-188, which created the so-called "three strikes law," a law primarily aimed at imposing harsher penalties on violent felons, repeat felony offenders, and drug traffickers, violated the single-subject rule by including sections which (1) amended the definition of a "conveyance" for purposes of the burglary statute to include a "railroad vehicle" as well as a railroad car and (2) required the court clerk to provide documents concerning an alien's felony or misdemeanor convictions to immigration officers).